JEREMIAH DAVIS,                           )
                                          )
                    Petitioner,           )
                                          )
v.                                        )        Nos.    3:01-CR-83-RLJ-HBG-1
                                          )                3:16-CV-688-RLJ
UNITED STATES OF AMERICA,                 )
                                          )
                    Respondent.           )


**MEMORANDUM OPINION**

Before the Court is Petitioner's motion to vacate, set aside, or correct his sentence pursuant

to 28 U.S.C. § 2255 [Doc. 48].[1] He bases the request on *Johnson v. United States*, 135 S. Ct. 2551

(2015), in which the Supreme Court held that the residual clause of the Armed Career Criminal

Act (ACCA), 18 U.S.C. § 924(e), was unconstitutionally vague [*Id.*]. The United States responded

in opposition [Docs. 52, 53]; Petitioner replied in turn [Doc. 54]. For the reasons that follow, the

§ 2255 petition will be **GRANTED**.

**I.     BACKGROUND**

In 2001, Petitioner pled guilty to, and was subsequently convicted of, possessing a firearm

as a felon, in violation of 18 U.S.C. § 922(g) [Doc. 28]. Based on three prior aggravated assault

convictions—two under Tennessee's old statute and one under Tennessee's current version of the

same, the United States Probation Office deemed Petitioner to be an armed career criminal subject

---

[1]     On February 11, 2016, this Court appointed Federal Defender Services of Eastern
Tennessee ("FDSET") for the limited purpose of reviewing the case to determine whether or not
Petitioner is eligible for collateral relief based on *Johnson v. United States*, 135 S. Ct. 2551 (2015).
*See* E.D. Tenn. SO-16-02 (Feb. 11, 2016). Consistent with that appointment, FDSET submitted
the instant § 2255 petition.

to the ACCA's fifteen-year term of imprisonment [Presentence Investigation Report (PSR) ¶¶ 18, 25, 27, 28]. In accordance with that designation, this Court sentenced Petitioner to 180 months' imprisonment [Doc. 28]. Petitioner appealed, but the Sixth Circuit affirmed his conviction and sentence on December 11, 2002. *United States v. Davis*, 52 F. App'x 738 (6th Cir. 2002).

On October 7, 2004, Petitioner filed a pro se motion to "correct sentence" [Doc. 37]. This Court denied that motion in a Memorandum and Order entered on October 20, 2004 [Doc. 38]. The Supreme Court issued the *Johnson* decision on June 26, 2015. On July 27, 2016, this Court received what it believed to be a successive petition [Doc. 42]. In accordance with that belief, it transferred the filing to the Sixth Circuit for authorization [Docs. 45, 46]. On December 12, 2016, the Sixth Circuit ruled that the instant motion was actually Petitioner's first § 2255 petition and, as such, no authorization was required [Doc. 47]. It returned the filing to this Court [Doc. 48].

## II. STANDARD OF REVIEW

The relief authorized by 28 U.S.C. § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

## III. ANALYSIS

The petition contains a single ground for collateral relief, arguing that Petitioner's convictions under the old Tennessee's aggravated assault statute no longer qualify as "violent felonies" under § 924(e) after the *Johnson* decision and that, without those convictions, Petitioner does not qualify for ACCA enhancement [Doc. 48 (challenging status of his aggravated assaults)].

**A.      Propriety of Armed Career Criminal Designation After the *Johnson* Decision**

The ACCA mandates a fifteen-year sentence for any felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another."  18 U.S.C. § 924(e)(1) (emphasis added).  The provision defines "serious drug offense" as any "offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law."  18 U.S.C. § 924(e)(2)(A)(ii).  The Act goes on to define "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, involves the use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause").  18 U.S.C. § 924(e)(2)(B). Only the third portion of the above definition—the residual clause—was held to be unconstitutionally vague by the Supreme Court in the *Johnson* decision.  135 S. Ct. at 2563.  The Court went on to make clear, however, that its decision did not call into question the remainder of the ACCA's definition of violent felony—the use-of-physical-force and enumerated-offense clauses.  *Id.*; *United States v. Priddy*, 808 F.3d 676, 682–83 (6th Cir. 2015).  Nor does *Johnson* disrupt the use of prior serious drug offenses as an independent form of ACCA predicate

conviction. *See, e.g.*, *United States v. Smith*, No. 10-CR-20058, 2015 WL 5729114, at *9–13 (E.D. Mich. Sept. 20, 2015) (noting that *Johnson* does not affect a defendant's categorization as an armed career criminal based on his or her prior serious drug offenses).

Petitioner does not dispute that his conviction for aggravated assault under Tennessee's current statute remains a violent felony under the use-of-physical-force clause. As such, the sole dispute between the parties is whether or not Petitioner's 1991 and 1992 aggravated assault offenses remain "violent felonies" under one of the unaffected provisions of § 924(e)(2)(B). *See, e.g.*, *United States v. Ozier*, 796 F.3d 597, 604 (6th Cir. 2015) (denying petition where convictions qualified as a predicates independent of the residual clause), *overturned on other grounds by Mathis v. United States*, 136 S. Ct. 2246, 2251 n.1 (2016). It appears that at least one does not.

At the time Petitioner committed the relevant offenses, Tennessee defined aggravated assault as follows:

(a) A person commits aggravated assault who:

    (1) Commits an assault as defined in § 39-13-101 and;

        (A) Causes serious bodily injury to another; or

        (B) Uses or displays a deadly weapon; or

    (2) Being the parent or custodian of a child or the custodian of an adult, intentionally or knowingly fails or refuses to protect such child or adult from an aggravated assault as defined in subdivision (a).

    (3) After having been enjoined or restrained by an order, diversion or probation agreement of a court of competent jurisdiction from in any way causing or attempting to cause bodily injury or in any way committing or attempting to commit an assault against an individual or individuals, attempts to cause or causes bodily injury or commits or attempts to commit an assault against such individual or individuals.

Tenn. Code Ann. § 39-13-102 (1990). "Assault" was in turn defined in the following manner:

4

(a) A person commits assault who:

    (1) Intentionally, knowingly or recklessly causes bodily injury to another;

    (2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or

    (3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

Tenn. Code Ann. § 39-13-101 (1990). Because aggravated assault is not listed as an enumerated offense in § 924(e)(2)(B)(ii), its status as a predicate depends on the use-of-physical-force clause.

To determine whether Petitioner's convictions under the above-quoted statute remain violent felonies under the use-of-physical-force clause, the Court needs to identify the precise crimes of conviction. *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013). To do so, it must employ a "categorical approach," under which it looks "only to the statutory definitions— elements—of a defendant's prior offense, and not to the particular facts underlying [each individual] conviction[]." *Id.* at 2283 (internal quotations omitted). If the statute categorically aligns with the generic version of the offense, the inquiry is over. If, however, the statute criminalizes conduct in excess of that covered by the enumerated-offense clause, it becomes necessary to determine whether the statute is divisible or indivisible. A divisible statute is one that comprises multiple crimes, alternative sets of elements. *Id.* at 2281. An indivisible statute is one that contains a single crime, lone set of indivisible elements. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). When faced with a divisible statute, the Court can resort to the "modified categorical approach," i.e., consult "a limited class of documents, such as indictments and jury instructions, to determine which alternative [set of elements] formed the basis of the defendant's prior conviction." *Id.* at 2281. "[T]he job . . . of the modified approach [is only] to identify, from

among several alternatives, the crime of conviction so that the court can" determine whether that variant of the offense qualifies as a violent felony under the ACCA's definition of violent felony. *Id.* at 2285. Because the categorical and modified approaches are concerned with elements and not "facts underlying [any particular] conviction," *Id.* at 2285, the Court is prohibited from using either approach to distinguish between alternative means for satisfying a single indivisible element. *Mathis*, 136 S. Ct. at 2253–54. Thus, it is important to distinguish between divisible provisions to which the Court can apply the modified approach and indivisible provisions to which it cannot. Convictions under an overly broad indivisible provision are incapable of serving as predicates.[2]

When determining whether the a criminal provision contains alternative elements for commission of multiple divisible crimes or alternative means of satisfying a single indivisible crime, binding authority tells the Court to consider: (1) the text of the statute; (2) any state court decisions interpreting that statute; and (3) where "state law fails to provide clear answers, . . . the record of a prior conviction," i.e., charging documents and jury instructions, for the "limited purpose" of distinguishing between means and elements. *Mathis*, 136 S. Ct. at 2256–57.

Tennessee Code Annotated § 39-13-102(a) is divisible between subdivisions (1)(A) and (1)(B) because "causes serious bodily injury" and "deadly weapon" are listed in the disjunctive and juries are required to agree on which aggravating circumstance applies. *See, e.g.*, *United States*

---

[2]     In *Mathis v. United States*, the Supreme Court held that: (1) a prior conviction does not qualify as a generic form of a predicate violent felony for purposes of the ACCA if an element of the crime of conviction is made broader than an element of the generic offense by way of an enumerated list of alternative factual means for satisfaction of the former; and (2) Iowa's burglary statute—which defines "structure" to include any building, structure, [or] land, water, or air vehicle"—had a broader locational component than generic burglary. 136 S. Ct. 2247–48, 53–54. Because the "structure" element of Iowa's burglary statute was broader than the parallel element of generic burglary, the Court concluded that the petitioner's prior convictions were incapable of supporting enhancement under the enumerated-offense clause. *Id.* at 2257.

*v. Cooper*, 739 F.3d 873, 879 (6th Cir. 2014) (recognizing that Tennessee Code Annotated § 39-13-102 "can be offended in a number of ways"). Tennessee Code Annotated § 39-13-101 is similarly divisible between subdivisions (a)(1), (a)(2), and (a)(3), but not with regard to the levels of *mens rea*— intentional, knowing, or reckless—contained within those subdivisions.

Having determined the extent to which Tennessee Code Annotated § 39-13-101 (1990) and Tennessee Code Annotated § 39-13-102 (1990) are divisible, this Court's next step is to examine permissible *Shepard* documents with the goal of identifying the variant of aggravated assault for which Petitioner was found guilty. The United States has attached "conviction records" to its response in opposition, but Petitioner argues that those documents do not qualify as "*Shepard* documents" capable of examination under the modified categorical approach [Doc. 54 p. (arguing that the "government has submitted no proof that [Petitioner's] juvenile adjudications for aggravated assault were for knowing or intentional conduct" and suggesting that the "Tennessee conviction records submitted" are "not *Shepard* documents and cannot be used to evaluate what sort of aggravated assaults" were committed). However, whether the "conviction records" are proper *Shepard* documents need not be resolved because, regardless of their status, the materials provided by the United States do not foreclose the possibility that at least one of Petitioner's aggravated assault convictions involved reckless—as opposed to intentional or knowing—conduct [*Compare* Doc. 52-1 pp. 1–2 (charging Petitioner with "shooting" someone with a "deadly weapon" and convicting him of "aggravated assault," but not indicating whether he undertook that conduct with an intentional, knowing, or reckless state of mind), *with* pp. 3–4 (changing Petitioner with "attempted first degree murder," convicting him of "aggravated assault," and indicating that the offense involved "intentional[]" and "premediate[ed]" action)]. Because the categorical

approach requires examination of the "minimum conduct criminalized," the propriety of Petitioner sentence depends on whether recklessness satisfies the ACCA's use-of-physical-force clause.

Petitioner argues that reckless aggravated assault does not qualify as a violent felony under the ACCA. In support, he relies primarily on *United States v. McMurray*, 653 F.3d 367 (6th Cir. 2011), in which the Sixth Circuit concluded based on *Leocal v. Ashcroft*, 543 U.S. 1 (2004), and *United States v. Portela*, 469 F.3d 496 (6th Cir. 2006), that the ACCA's use-of-physical-force clause "requires more than reckless conduct." *McMurray*, 653 F.3d at 374–75; *see also United States v. Cooper*, 739 F.3d 873, 879 (6th Cir. 2014) ("To its credit, the government concedes that [the defendant's] prior conviction [for Tennessee aggravated assault] does not categorically qualify as a crime of violence under either the [use-of-physical-force clause] or the residual [clause], according to our past decisions, because the statute criminalizes reckless conduct.") (internal quotations omitted); *United States v. McFalls*, 592 F.3d 707, 716 (6th Cir. 2010) ("South Carolina's common-law crime of ABHAN is also not categorically a crime of violence. This is because ABHAN applies not only to intentional conduct, but also to reckless conduct. We have squarely held that under the Guidelines definition of 'crime of violence' contained in [Section] 2L1.2(b)(1)(E), cmt. 1(B)(iii) [of the United States Sentencing Guidelines], which is materially indistinguishable from the definition that we apply today ([Section] 4B1.2(a), cmt. 1), a crime requiring only recklessness does not qualify. Other circuits have reached the same conclusion under the indistinguishable words of the [ACCA]."); *Portela*, 469 F.3d at 499 ("We now follow the 'considered dicta' of *Leocal* . . . and the reasoning of our two sister circuits to hold that a crime requiring only recklessness does not qualify as a 'crime of violence' under 18 U.S.C. § 16. Because the catch-all clause of [Section] 2L1.2(b)(1) uses identical language, Portela's conviction for reckless vehicular assault is not a 'crime of violence' under that clause, and because it is not,

the district court lacked support for its 16-level increase in Portela's sentence."); *Cutshaw v. United States*, No. 2:16-CV-106-RLJ, 2016 WL 3212269, at \*2 (E.D. Tenn. June 7, 2016) ("Two of Petitioner's four predicate offenses were for [reckless aggravated assault] and felony evading arrest.  Neither offense qualifies as a violent felony.").  The United States counters by arguing that the above-cited decisions of the Sixth Circuit were effectively overruled by the Supreme Court's decision in *Voisine v. United States*, 136 S. Ct. 2272 (2016).

### 1. *Voisine v. United States*, 136 S. Ct. 2272 (2016)

18 U.S.C. § 922(g)(9) prohibits any person convicted of a "misdemeanor crime of domestic violence" form possessing a firearm.  The term "misdemeanor crime of violence" is defined statutorily, in relevant part, as a misdemeanor that "has as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon."  18 U.S.C. § 921(a)(33)(A)(ii).  In *Voisine*, the Supreme Court considered "whether misdemeanor assault convictions for reckless (as contrasted to knowing or intentional) conduct trigger the statutory firearms ban" found in § 922(g)(9).  *Voisine*, 136 S. Ct. 2276.  The Supreme Court ultimately found that it did, relying on a combination of the statutory text, legislative history, and practical concerns.  *Id.* at 2278–82.

With regard to statutory text, the Supreme Court found that "[n]othing in the word 'use'— which is the only statutory language either party thinks is relevant—indicates that § 922(g)(9) applies exclusively to knowing or intentional domestic assaults."  *Id.* at 2278.  It further noted that the term "use" means "the act of employing something," and that with such understanding "the force involved in a qualifying assault must be volitional."  *Id.* at 2278–79 (internal quotations omitted).  "But," it provided the following qualification:

> the word "use" does not demand that the person applying force have the purpose or practical certainty that it will cause harm, as compared with the understanding that it is substantially likely to do so.  Or, otherwise said, the

> word is indifferent as to whether the actor has the mental state of intention,
> knowledge, or recklessness with respect to the harmful consequences of his
> volitional conduct.

*Id.* at 2279. Moreover, the Supreme Court expressly distinguished *Leocal*—on which the Sixth

Circuit relied in *McMurray*. *Id.* at 2279–80 ("And contrary to petitioners' view, nothing in *Leocal*

suggests a different conclusion—i.e., that 'use' marks a dividing line between reckless and

knowing conduct . . . [a]nd indeed, *Leocal* . . . recognized the distinction between accidents and

recklessness, specifically reserving the issue whether the definition in 18 U.S.C. § 16 embraces

reckless conduct . . . as we now hold § 921(a)(33)(A) does."). In short, the Supreme Court found

that "[a] person who assaults another recklessly 'use[s]' force no less than one who carries out that

same action knowingly or intentionally," and, as a result, concluded that the text of § 921(a)(33)(A)

favors defining "use" to include reckless conduct. *Id.* at 2280.

     With regard to legislative history, the Supreme Court began by noting that "Congress

enacted § 922(g)(9) in 1996 to bar those domestic abusers convicted of garden-variety assault and

battery misdemeanors—just like those convicted of felonies—from owning guns." *Id.* It then

noted that in 1996, thirty-four states plus the District of Columbia "defined such misdemeanor

offenses to include the reckless infliction of bodily harm." *Id.* This made sense, because several

decades before 1996, the Model Penal Code took the position that recklessness should suffice to

establish criminal liability for assault. *Id.* Thus, it reasoned, "in linking § 922(g)(9) to

[misdemeanor assault and battery statutes], Congress must have known it was sweeping in some

persons who had engaged in reckless conduct." *Id.* Moreover, if § 922(g)(9) did not apply to

recklessly committed assaults, then § 922(g)(9) would be functionally inoperative in thirty-five

jurisdictions. *Id.* at 2280–81 (noting that many state assault and battery laws are indivisible under

*Decamps*, meaning the inclusion of recklessness would render the entire statute inapplicable to §

10

922(g)(9) if the petitioners' narrower definition of "use" was applied in the context of misdemeanor crimes of violence).  Accordingly, the Supreme Court found that legislative history and practical concerns also favored defining "use" to include offenses committed recklessly.

## 2. Impact of the *Voisine* Decision on § 924(e)(2)(B)(i)

The United States argues that *Voisine* effectively overruled the Sixth Circuit's line of cases that culminated in *McMurray* [Doc. 52 pp. 3–8], and that all violations of Tennessee Code Annotated § 39-13-102(a)(1) (1990), regardless of *mens rea*, constitute predicate violent felonies under the ACCA's use-of-physical-force clause [*Id.* at 8–9 (noting that violations of that provision invariably involve an application of violent physical force regardless of whether the underlying assault is committed with a deadly weapon or results in serious bodily injury)].  Specifically, the United States asks that this Court assign the word "use" the same meaning under the ACCA as the Supreme Court gave it under § 921(a)(33)(A) [*Id.* at 3–8].  In addition to the similar statutory language, the United States argues that the ACCA and § 922(g)(9) share a common purpose [*Id.*].

Petitioner asserts several counter-arguments in an attempt to distinguish *Voisine* [Doc. 54].  First, he suggests that the purposes of the ACCA and misdemeanor domestic violence statute differ in that Congress enacted the former in an effort to "supplement States' law enforcement efforts against 'career' criminals" [*Id.* at 2 (quoting *Taylor v. United States*, 495 U.S. 575, 581 (1990)], and the latter to close a dangerous loophole in existing gun control laws—which included the previously-enacted ACCA [*Id.* at 2–3].  Second, he points to an acknowledgment by the Supreme Court in *Voisine* that similarly worded statues can be interpreted differently, *see Voisine*, 136 S. Ct. at 2280 n. 4, as proof that the definition of "use" applicable under § 921(a)(33)(A)—like the definition of "force," *see Castleman*, 134 S. Ct. at 1410 ("But here, the common-law meaning of 'force' fits perfectly: the very reasons we gave for rejecting the meaning in defining a "violent

11

felony" are reasons to embrace it in defining a 'misdemeanor crime of domestic violence.'"")—differs from the definition of "use" applicable under § 924(e) [Doc. 54 p. 2].

### i. Cases Supporting Petitioner's Position

In *United States v. Sabetta*, the District of Rhode Island noted that prior First Circuit authority held that the reckless use of force could not qualify as a "crime of violence" and, in light of that otherwise binding decision, refused to extend *Voisine*'s interpretation of the word "use" to the ACCA. No. 00-cr-135-PAS, 2016 WL 6157454, at *3 (D.R.I. Oct. 24, 2016) (citing *United States v. Fish*, 758 F.3d 1, 8–10 (1st Cir. 2014)). The *Sabetta* court concluded that *Voisine* did not disrupt the *Fish* holding for the following reasons: (1) the *Voisine* Court explicitly stated that its decision did not extend to 18 U.S.C. § 16, which "means that the First Circuit's holding in *Fish* that recklessness is insufficient under § 16's definition of 'crime of violence,' and the implicit application of that holding to the ACCA's definition of 'violent felony' in [*United States v. Hudson*, 823 F.3d 11, 16 (1st Cir. 2016)], continue to be binding in this Circuit," *Sabetta*, 2016 WL 6157454 at *8; (2) the Supreme Court "had previously defined terms that are used identically in the ACCA and the Misdemeanor Domestic Violence Act to have different meanings." *Id.* at *9; and (3) the Supreme Court worried in *Voisine* about rendering the Misdemeanor Domestic Violence Act inoperable in a large number of jurisdictions, but no equivalent risk existed for the ACCA. *Id.*

Similarly, in *Jaramillo v. United States*, the District of Utah first identified Tenth Circuit case law establishing that crimes committed recklessly were not crimes of violence under Section 4B1.2(a). No. 1:16-cv-87-TS, 2016 WL 5947265, at *6 (D. Utah Oct. 13, 2016) (citing *United States v. Armijo*, 651 F.3d 1226, 1237 (10th Cir. 2011)). The court went on to note the split of authorities on the question of whether *Voisine* applies to Section 4B1.2(a). *Id.* at *7. Citing similar concerns as the *Sabetta* court, the District of Utah held that it "cannot conclude that *Voisine*

abrogated Tenth Circuit case law requiring a mental state greater than recklessness for predicate crimes under the ACCA. Until the Tenth Circuit sees fit to review [its case law] in light of *Voisine*, the Court is bound to follow those cases." *Id.* at *8.

Two days prior to *Jaramillo*, the District of Utah decided *Broadbent v. United States*, which refused to extend *Voisine* because it "did not address the definition of a 'crime of violence' in the context of the [ACCA] or the USSG," and because the *Voisine* holding "is expressly limited to the scope of § 921(a)(33)(A)." No. 2;16-cv-569, 2016 WL 5922302, at *5 (D. Utah Oct 11, 2016).

The District of Maine declined to extend its rationale to the ACCA's use-of-force clause in *Bennett v. United States*, No. 1:16-cv-251-GZS, 2016 WL 3676145 at *4 (D. Me. July 6, 2016). The court first found that because the Supreme Court has interpreted similar terms in the ACCA and the Misdemeanor Domestic Violence Act in different ways, "it is far from clear that *Voisine's* inclusion of recklessness within the misdemeanor convictions covered by 18 U.S.C. §§ 922(g)(9) [and] 921(a)(33)(A) portends a similar interpretation of the ACCA's force clause." *Id.* at *3. It went on to apply an analysis similar to that in *Castleman*, and found that to give the term "use" the same meaning in the ACCA as it was given in *Voisine* would lead to "comical" results. *Id.* ("After all, if *Voisine's* interpretation of 'use' is applied to ACCA, three past convictions for injuries that result from reckless plate throwing (the example discussed at length in *Voisine*, or reckless driving, could be sufficient to earn a designation as an 'armed career criminal.' Labeling a thrice-convicted 'Angry Plate Thrower' or 'Reckless Policeman' as an 'Armed Career Criminal' would appear to be the type of 'comical misfit' the Supreme Court has previously indicated must be avoided when interpreting 18 U.S.C. § 924(e)(2)(B)." (internal citations omitted)). Finally, the *Bennett* court cited the Supreme Court's "expressed hesitation" to apply the ACCA to "crimes which, though dangerous, are not typically committed by those whom one normally labels 'armed career

criminals,'" as justification for why it could not "override the already-cited precedents holding that recklessness is an insufficient *mens rea* for purposes of the ACCA." *Id.* at *4.

In *United States v. Rodriguez-Ruiz*, the Western District of Oklahoma chose not to extend *Voisine*'s definition of "use" to the ACCA because "the Supreme Court has treated the two statutes differently [in the past]." No. 16-cv-669-C, 2016 WL 6902482, at *4 (W.D. Okla. Nov. 23, 2016). The Western District of Pennsylvania and District of New Jersey reached the same result for similar reasons. *See Nelson v. United States*, No. 16-3409-JLL, 2017 WL 150242, at *5 (D.N.J. Jan. 12, 2017) (refusing to extend *Voisine*'s definition of "use" to the ACCA because binding Third Circuit precedent held the opposite and the Supreme Court expressly limited *Voisine*'s result to §§ 922(g)(9) and 921(a)(33)(A)) *United States v. Hill*, No. 16-550, 2016 WL 7076929, at *6 (W.D. Penn. Dec. 5, 2016) (concluding that *Voisine* did not overrule binding Third Circuit precedent that recklessness is insufficient under Section 4B1.2's use-of-physical-force clause). The Northern District of California and District of Arizona refused to deviate from pre-existing Ninth Circuit authority which held reckless is not sufficient under the ACCA and § 924(c) because (1) *Voisine* limited its application to the Misdemeanor Domestic Violence Act and (2) the practical concerns cited in support of a broader reading of "use" are not applicable outside of that context. *Mutee v. United States*, No. 16-O1583-PHX-SRB, 2017 WL 923203, at *3 (D. Ariz. Mar. 8, 2017); *United States v. Johnson*, No. 92-cr-497, 2016 WL 7666523, at *9–11 (N.D. Cal. Dec. 16, 2016).

Most recently, in *United States v. Dancy*, the District of Massachusetts agreed with the District of Rhode Island that *Voisine* does not overrule the First Circuit's prior holding that recklessness does not satisfy the ACCA's use-of-physical-force clause. No. 16-11230, 2017 WL 122913, at *3–4 (D. Mass. April 3, 2017). However, instead restating the reasons in *Sabetta*, the court relied on a key difference in the language of the ACCA and § 921(a)(33)(A). *Id.*

Specifically, the *Dancy* court noted that unlike the Misdemeanor Domestic Violence Act—which applies to "use[s]" of physical force generally, the ACCA requires that the force be "use[d] . . . against the person of another." *Id.* at *3. It went on to conclude that this additional requirement that the force be used "against the person of another" is what drove *Leocal*'s analysis and raises the level of *mens rea* required from reckless to knowing conduct. *Id.* at *3–4. Thus, the court concluded that, "even after *Voisine*, an offense which can be committed with a *mens rea* of recklessness is not a 'violent felony,' which 'has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* at *4 (quoting 18 U.S.C. § 924(e)(2)(B)(i)); *see also Virden v. United States*, No. 09-10325-LTS, 2017 WL 470891, at *5 (D. Mass. Feb. 3, 2017) (refusing to extend *Voisine*'s interpretation of "use" to the ACCA because "the law as presently articulated by the Supreme Court and First Circuit dictates" that reckless conduct does not satisfy the ACCA's use-of-physical-force clause).

### ii. Cases Supporting the United States' Position

Two Courts of Appeal have extended *Voisine*'s interpretation of the term "use" to the ACCA or career offender provision. On September 22, 2016, the Fifth Circuit extended *Voisine*'s interpretation of the term "use" to the "use-of-force" clause found in Section § 4B1.2(a)(1). *United States v. Howell*, 838 F.3d 489, 501 (5th Cir. 2016). In support, it briefly cited to *Voisine*'s discussion of legislative history and found that "[t]he Sentencing Commission similarly must have known that the Model Penal Code had taken the position that a *mens rea* of recklessness should establish criminal liability, and that various states incorporated that view into assault statutes." *Id.* Two weeks before *Howell*'s publication, the Eighth Circuit extended *Voisine* to the ACCA in *United States v. Fogg*, 836 F.3d 951 (8th Cir. 2016). The *Fogg* court concluded that because the

ACCA's use-of-physical-force clause contains similar language to its counterpart in 18 U.S.C. 921(a)(33)(A), *Voisine*'s reasoning must be extended to the ACCA. *Id.* at 956.

Three districts have extended *Voisine* to the ACCA or career offender provision. The District of Massachusetts first extended *Voisine* to the ACCA in *United States v. Webb*, relying in large part on the Fifth and Eighth Circuits' analyses in *Howell* and *Fogg*. No. 01-10267-WGY, 2016 WL 6647929, at *11 (D. Mass. Nov. 9, 2016); *see also United States v. McGregor*, No. 07-10312-NMG, 2017 WL 101305, at *2 (D. Mass. Jan. 10, 2017) (finding that the First Circuit is "predetermined" to extend *Voisine*'s definition of "use" to the ACCA). The Northern District of Mississippi has also extended *Voisine* to the ACCA, simply relying on the relevant statutes' similar language. *Kirk v. United States*, No. 4:05-cr-53-GHD-DAS, 2016 WL 6476963 at *6 (N.D. Miss. Nov. 1, 2016); *see also McClinton v. United States*, No. 2:10-cr-160-SA-JMV, 2016 WL 7191706, at 8 (N.D. Miss. Dec. 12, 2016) (extending *Voisine*'s definition of "use" to Section 4B1.2), Finally, the Middle District of North Carolina mentioned in a footnote that *Voisine*'s holding logically extends to the ACCA's use-of-force clause. *Holman v. United States*, No. 1:14-cv-549, 2016 WL 6304727 at *13 n.13 (M.D.N.C. Oct. 27, 2016) ("Reckless conduct thus constitutes a 'use' of force under the ACCA because the force clauses in 18 U.S.C. § 921(a)(33)(A)(ii) and the ACCA both define qualifying predicate offenses as those involving the 'use of physical force' against another." (quoting *Fogg*, 836 F.3d at 956)).

### iii. Viability of *McMurray* After *Voisine*

This Court has an obligation to follow the Supreme Court where an intervening decision of that Court directly reverses an opinion of the Sixth Circuit or implicitly reverse the same through a case with indistinguishable facts. *In re Higgins*, 159 B.R. 212, 215–16 (S.D. Ohio 1993). If, however, the intervening decision neither expressly nor implicitly overrules the prior Sixth Circuit

decision, this Court must "be extremely careful in concluding that circuit precedent is no longer good law," *Id.* at 216 (quoting *Rodriguez v. Bowen*, 678 F. Supp. 1456, 1462 (E.D. Cal. 1988), and should only deviate from such authority where it is "powerfully convinced that the circuit will overrule itself at the next available opportunity." *Id.* "*[S]ub silentio* overruling of a Court of Appeals decision by a Supreme Court case resting on different facts is a rare occurrence," and thus requires strong evidence that the "court would repudiate [its holding] if given a chance to do so." *Id.* (quoting *Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731, 734 (7th Cir. 1986)).

After careful review of the *Voisine* decision, the parties arguments, and how other district and circuit courts have treated the *Voisine* decision outside the context of § 921(a)(33)(A), this Court is not convinced that the Sixth Circuit would interpret *Voisine* as invalidating *McMurray*. *See United States v. Wehunt*, No. 1:16-cv-17-HSM-1, 2017 WL 347544 (E.D. Tenn. Jan 24, 2017) concluding that district courts in the Sixth Circuit remain bound by *McMurray*'s holding that reckless conduct does not satisfy Section 4B1.2's use-of-physical-force clause after V*oisine*).

First, the Supreme Court explicitly stated in *Voisine* that its interpretation of the term "use" did not extend to 18 U.S.C. § 16, notwithstanding the fact that it uses nearly identical language as is found in 18 U.S.C. § 921(a)(33)(A). *Voisine*, 136 S. Ct. 2280 n. 4 ("Like *Leocal*, our decision today concerning § 921(a)(33)(A)'s scope does not resolve whether 18 U.S.C. § 16 includes reckless behavior. Courts have sometimes given those two statutory definitions divergent readings in light of differences in their contexts and purposes, and we do not foreclose that possibility with respect to their required mental states."). As such, it makes sense that the Supreme Court's interpretation of the word "use" under the Misdemeanor Domestic Violence Act does not extend to the ACCA merely by virtue of the fact that the two provisions contain similar language.

Second, textual differences between § 924(e)(2)(B)(i) and § 921(a)(33)(A) support assigning those provisions different definitions for the term "use." Unlike § 921(a)(33)(A), § 924(e)(2)(B)(i) requires that the force be used "against the person of another." This qualifier drove *Leocal*'s analysis: after all, "when interpreting a statute that features a word as elastic as the word 'use,' [the court must] construe language in its context and in light of the words surrounding it." *Leocal*, 543 U.S. at 2. Linking "use" to "against the person of another" "connotes 'active employment'" in a way that "raises the *mens rea* stakes, requiring deliberate conduct." *Dancy*, 217 WL 1227913, at *4 (citing *McMurray*, 653 F.3d at 375). The ACCA's description of the offenses it encompasses provides additional support for this interpretation. A violent felony that requires physical force be "used 'against the person of another' calls to mind a set of offenses which invoke purposeful action, rather than merely reckless behavior." *Id.*

Third and relatedly, differences in context and purpose frequently lead to divergent readings of similarly worded statutes. In *Voisine*, the Supreme Court repeatedly referenced the Misdemeanor Domestic Violence Act's context and purpose. For example, the Court found that 18 U.S.C. § 922(g)(9) was enacted to "close [a] dangerous loophole in the gun control laws" that permitted domestic violence convicts to possess firearms because "many perpetrators of domestic violence are charged with misdemeanors rather than felonies." *Voisine*, 136 S.Ct. at 2276 (internal quotations omitted). The Court went on to discuss the history of domestic violence statutes, and noted that when Congress passed the Misdemeanor Domestic Violence Act, thirty-four states and the District of Columbia "defined such misdemeanor offenses [of domestic violence] to include the reckless infliction of bodily harm." *Id.* at 2280. The inclusion of recklessness as an appropriate *mens rea* to find one guilty of such a misdemeanor was grounded in the Model Penal Code, which had long "taken the position that a *mens rea* of recklessness should generally suffice to establish

18

criminal liability, including for assault." *Id.* Accordingly, the Court found that at the time

Congress passed the Misdemeanor Domestic Violence Act, it "must have known that it was

sweeping in some persons who had engaged in reckless conduct." *Id.* The Court reinforced its

logic by finding that if the term "use" did not encompass reckless conduct, then 18 U.S.C. §

922(g)(9) would be functionally inoperative in thirty-five jurisdictions. *Id.* at 2280–81.

> The Fifth Circuit seized upon this analysis, arguing as follows:

> [t]he Supreme Court's discussion in *Voisine* of the history of modern assault statutes
> is also illuminating as to the backdrop against which the Sentencing Commission
> defined a "crime of violence" as including "use" of force against another
> person . . . . The Sentencing Commission similarly must have known that the
> Model Penal Code had taken the position that a *mens rea* of recklessness should
> establish criminal liability, and that various states incorporated that view into
> assault statutes. In any event, the Commission has largely modeled the "crime of
> violence" definition that includes . . . "use" of force after the ACCA's similar "use"
> of force provision.

*Howell*, 838 F.3d at 501. This Court disagrees. In *Voisine*, the Court confined its discussion of

modern assault statutes to the context of domestic violence, which was often punished by

misdemeanors rather than felonies. *Voisine*, 136 S.Ct. at 2276 ("But many perpetrators of

domestic violence are charged with misdemeanors rather than felonies, notwithstanding the

harmfulness of their conduct."). The Model Penal Code's position that a *mens rea* of recklessness

could suffice to establish criminal liability for assault is far less illuminating in the current case

because the concern in *Voisine* that excluding reckless conduct would render 18 U.S.C. § 922(g)(9)

functionally inoperative in the majority of the United States is not present in the context the ACCA.

Forth, this Court agrees that extending *Voisine*'s definition of "use" to the ACCA would

lead to a "comical misfit," in which "three past convictions for injuries that result from reckless

plate throwing—the example discussed at length in *Voisine*—or reckless driving, could be

sufficient to earn a designation as an 'armed career criminal.'" *Bennett*, 2016 WL 3676145 at *3.

That result would be counter-intuitive give the Supreme Court's acknowledged "hesitat[ion] . . . to apply the [ACCA] to crimes which, though dangerous, are not typically committed by those whom one normally labels armed career criminals." *Id.* at *4 (internal citations omitted).

Given these findings, this Court is not powerfully convinced that the Sixth Circuit would conclude at the next available opportunity that *Voisine* overruled *McMurray*. As such, this Court remains bound to follow *McMurray* until the Sixth Circuit sees fit to review its case law. Because *McMurray* dictates that a crime committed recklessly does not qualify as a violent felony, at least one of Petitioner's three aggravated assault offenses cannot serve as a predicate offense under § 924(e)(2)(B)(i). *See McMurray*, 653 F.3d at 374–75 ("Thus, . . . we conclude that the 'use of physical force' clause of the ACCA, § 924(e)(2)(B)(i), requires more than reckless conduct."). Without that offense, Petitioner no longer qualifies as an armed career criminal, meaning his 180-month sentence and five-year term of supervised release exceeds the maximum authorized sentence for a non-ACCA offender by 60 months' incarceration and two years' supervised release. *See* 18 U.S.C. § 924(a)(2) ("Whoever knowingly violates subsection . . . (g) . . . of section 922 shall be . . . imprisoned not more than 10 years.").

Where a § 2255 claim has merit, district courts have the discretion to choose between discharging the petitioner, resentencing the petitioner, correcting the petitioner's sentence, or granting the petitioner a new trial. 28 U.S.C. § 2255(b). For purpose of the current case, this Court finds correction of Petitioner's sentence to be the most appropriate form of relief. *United States v. Torres-Otero*, 232 F.3d 24, 30 (1st Cir. 2000) ("[I]n cases were the sentence (but not the conviction) is infirm, only the 'resentenc[ing]' or 'correct[ing] the sentence' options are open to the district court, since a prisoner should never be 'discharge[d]' or 'grant[ed] a new trial' based solely on a defective sentence.").

**IV.     CONCLUSION**

Petitioner has already served over 175 months in prison [Doc. 48 (noting that Petitioner had already been incarcerated for approximately 171 months at the time that this Court received the instant successive petition.], a total exceeding the ten-year custodial maximum applicable to him after the *Johnson* decision.  For this reason, Petitioner successive § 2255 motion [Doc. 48] will be **GRANTED** and his sentence will be reduced to "time served."  The accompanying Order will take effect ten days from its entry in order to give the Bureau of Prisons time to process release. Further, Petitioner's judgment will be **AMENDED** to reflect a three-year term of supervised release.  Except as provided herein, all provisions of Petitioner's judgment will remain in effect.

**AN APPROPRIATE ORDER WILL ENTER.**


**IT IS SO ORDERED.**

ENTER:


<u>          s/ Leon Jordan          </u>
United States District Judge